UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
IRINA DUNN,                                                                  Chapter 7
        DEBTOR                                                           Case No. 05-10293-WCH

_____

IGOR POTAPOV and B.A. MAKDEN CORP.,
        PLAINTIFF,
                                                                     Adversary Proceeding
v.                                                                                     No. 05-01076

IRINA DUNN,
        DEFENDANT.

_____

IN RE:
ALEXANDER V. SHERMAN,                                             Chapter 7
        DEBTOR                                                           Case No. 05-22368-JNF

_____

IGOR POTAPOV and B.A. MAKDEN CORP.,
        PLAINTIFF,
                                                                       Adversary Proceeding
v.                                                                                     No. 05-01600

ALEXANDER SHERMAN,
        DEFENDANT.

_____

IN RE:
ALAN HOWARD DAVIDSON,                                           Chapter 7
        DEBTOR                                                           Case No. 05-22293-WCH

_____

IGOR POTAPOV and B.A. MAKDEN CORP.,
        PLAINTIFF,
                                                                       Adversary Proceeding
v.                                                                                     No. 05-01601

ALAN DAVIDSON,
        DEFENDANT.

_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

       The matter before the Court is the Plaintiffs' Motion for Summary Judgment (the "Motion")

1

in the consolidated adversary proceedings against the Defendants seeking a determination that a debt owed by the Defendants arising from a National Association of Securities Dealers ("NASD") arbitration award (the "Award") is excepted from discharge under 11 U.S.C. §§ 523(a)(4) and/or (a)(6). I previously granted the Motion for Summary Judgment under 11 U.S.C. § 523(a)(4), finding that the Award was res judicata and demonstrated all the elements of embezzlement. The United States District Court for the District of Massachusetts reversed on the basis that the Award was not res judicata as to 11 U.S.C. § 523, but held that arbitration panel necessarily found that the disputed transactions were unauthorized and that a conversion occurred. On remand, the Plaintiffs assert that based upon the district court's holding, no genuine issue of material fact exists because the Defendants' sole defense to the Motion for Summary Judgment has been that the underlying transactions were authorized. I took the matter under advisement and the parties filed briefs. For the reasons set forth below, I will enter an order denying the Motion.

## II. BACKGROUND

Irina Dunn ("Dunn"), Alexander Sherman ("Sherman"), and Alan Davidson ("Davidson") (collectively, the "Defendants") operated a brokerage firm known as Whitehorne & Co. Ltd. ("Whitehorne") in Newton, Massachusetts. In 1999, Igor Potapov ("Potapov") opened three securities margin accounts at Whitehorne: one for himself, one for his wife, and one on behalf of B.A. Makden Corp. ("Makden"), a stock trading and investing company for which Potapov held a power of attorney.[1] While Potapov was on an extended trip to Russia between October and December of 1999, these margin accounts suffered losses of approximately $983,000.

In September 2001, Potapov brought an arbitration claim against the Defendants pursuant to his margin account agreements before the NASD alleging conversion, fraud, breach of fiduciary

---

[1] Affidavit of Igor Potapov (the "Potapov Affidavit) ¶ 3-4, Docket No. 22.

2

duty, breach of contract, and negligence.[2]  Potapov asserted that the Defendants converted or misappropriated the funds in his Whitehorne accounts.  In their defense, the Defendants argued that Potapov authorized the transactions which resulted in the losses to the Plaintiffs' accounts.

The NASD held an eleven day hearing on the merits before a panel of three arbitrators in which one hundred forty-seven exhibits were introduced into evidence and thirteen witnesses testified.[3]  On December 10, 2004, the NASD issued the Award in favor of the Potapov against the Defendants, jointly and severally, for $983,000 in compensatory damages.[4]  The Award includes an outline of the proceedings but does not set forth any specific findings of fact or articulate a basis for its decision.[5]

The Defendants each filed individual Chapter 7 bankruptcy petitions in 2005 seeking to discharge the Award.  Potapov, on behalf on himself and Makden (collectively, the "Plaintiffs"), filed separate adversary complaints in each of the Defendants' cases seeking to except the Award from discharge under 11 U.S.C. §§ 523(a)(4) or (a)(6) (collectively, the "Complaint").  The Defendants filed answers in which they generally denied all allegations of the Complaint and argued that Potapov had authorized the transactions.  On October 17, 2005, the Plaintiffs filed a motion to consolidate the three adversary proceedings, which I granted on December 1, 2005.

On January 6, 2006, the Plaintiffs filed the Motion, a Memorandum of Law in Support of the Motion for Summary Judgment, an Affidavit of Igor Potapov, an Affidavit of Edward J. Fallman, Esq., counsel to the Plaintiffs, and a Statement of Material Facts As To Which There is No Genuine

---

[2] Affidavit of Edward J. Fallman, Esq. (the "Fallman Affidavit"), Docket No. 23, Exhibit B.

[3] *Id.* at ¶ 4.

[4] *Id.* at ¶ 5, Exhibit B.

[5] *Id.*

3

Issue To Be Tried ("Statement of Material Facts").[6] The Plaintiffs argued that the Award is non-dischargeable because it arose from the intentional conversion of the Plaintiffs' margin accounts which constituted an embezzlement under 11 U.S.C. § 523(a)(4). In support thereof, Potapov averred in his affidavit that Sherman admitted transferring other customer's losses into the Plaintiffs' accounts to prevent those accounts from going negative and forcing Whitehorne out of business.[7] Further, he alleged both Davidson and Dunn admitted that they agreed to transfer the losses to the Plaintiff's accounts.[8] Had the Defendants not done so, the clearing firm would have shut down Whitehorne's operations and eventually looked to the Defendants personally for outstanding deficiencies on customer margin accounts.[9] Additionally, the Plaintiffs asserted that the Award is non-dischargeable because the actions of the Defendants constituted a willful and malicious injury to the Plaintiffs under 11 U.S.C. § 523(a)(6). Further, the Plaintiffs' argued that the Defendants' should be barred under the principles of collateral estoppel from re-litigating the issue of whether Potapov authorized the transactions which resulted in the Plaintiffs' losses.

In response, the Defendants filed objections to the Motion on January 23, 2006.[10] In general, they argued that the Plaintiffs failed to meet their burden for summary judgment based upon the Defendants' blanket denial of the facts. In particular, they argued that the Motion should be denied because Potapov authorized the transactions which resulted in the losses to the Plaintiffs' accounts

---

[6] Docket Nos. 20, 21, 22, 23, 25.

[7] Potapov Aff. ¶ 36-37.

[8] *Id.* at ¶ 42-43.

[9] *Id.* at ¶ 41.

[10] Each Defendant filed a separate objection to the Motion. They are, however, essentially carbon copies with nearly identical paragraphs and the same five exhibits attached. Therefore, I will refer to the objections as "Objection," for purposes of clarity.

4

and was motivated to do so based upon his interest in the holding company which owned Whitehorne. Also, the Award's lack of specific findings prevent it from having any preclusive effect on this proceeding. In the Objection, Sherman and Davidson also argue that the Award cannot be non-dischargeable in their bankruptcies because they did not execute the disputed transaction. In support of the Objection, the Defendants submitted one affidavit.[11] In the Dunn Affidavit, Dunn expressly stated that Potapov directed her to cover an uncovered short trade with one of his accounts, and that an initial loss of $84,000 grew to over $900,000 due to his refusal to allow her to close the position.[12] Dunn further averred that Potapov was aware of this deterioration despite being out of the country, due to regular "close telephonic communication," internet monitoring of accounts, and statements sent to his non-traveling spouse.[13]

On January 25, 2006, I held a hearing on the Motion and Objection. As a preliminary matter, the Plaintiffs' asserted that the Objection was procedurally defective as it did not include a "concise statement of material facts of record" demonstrating a "genuine issue to be tried" as required by District Court Local Rule 56.1, made applicable to bankruptcy proceedings by MLBR 7056-1. Though technically correct, I held that the Objection contained sufficient facts which I would accept as a satisfactory response to the Statement of Material Facts.[14]

Both parties presented oral arguments and at the conclusion of the hearing I dictated findings from the bench. Relying on *Printy v. Dean Witter Reynolds, Inc.*,[15] I held that the Award was res

---

[11] The affidavit is captioned "Irina Dunn's Objection to Plaintiff's Motion for Summary Judgment." Docket No. 33, Ex. 3 ("Dunn Affidavit").

[12] Dunn Aff. ¶ 7-12, Ex. 3.

[13] *Id*. at ¶ 12.

[14] Trans. Jan. 25, 2007 at 11, ¶ 1-12.

[15] *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853 (1st Cir. 1997).

5

judicata as to anything which was or could have been raised during the NASD arbitration proceedings. The Award, however, did not prove the injury sustained to the Plaintiffs was "willful and malicious," and therefore I ruled in favor of the for the Defendants with respect to the 11 U.S.C. § 523(a)(6) claim. Nevertheless, I found that the Award and Complaint demonstrated all the elements of embezzlement 11 U.S.C. § 523(a)(4) and granted summary judgment in favor of the Plaintiffs.

The Defendants appealed my ruling to the United States District Court for the District of Massachusetts. Judge Saris issued a Memorandum and Order on February 27, 2007 reversing my January 25, 2007 order granting summary judgment and remanding the case back for further consideration.[16] She found that:

> Under the first prong of the collateral estoppel test - whether the issue sought to be precluded is the same as that involved in the prior action - the appellees' preclusion argument falls short. Although the panel necessarily found that Potapov did not authorize the transactions and that a conversation occurred, there was no explicit or implicit finding that the debtors, either collectively or individually, acted with a sufficient mental state to constitute "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" under § 523(a)(4) or "for willful and malicious injury" under § 523(a)(6). As the debtors correctly point out, additional facts concerning the mental state of any of the three appellants is necessary to render the debt non-dischargeable under either of these sections. It is certainly conceivable that Potapov did not authorize the transactions but that the debtors did not act with the requisite fraudulent mental state to constitute fraud or malicious conduct. For instance, perhaps one of the debtors was mistaken in good faith about Potapov's instructions.[17]

Judge Saris also concluded that the Plaintiffs' argument that the Defendants failed to submit sufficient evidence to create a genuine issue of material fact was not properly before her as I had not reached it in granting the Motion.[18]

---

[16] *See Potapov v. Dunn et al. (In re Dunn)*, 1:06-cv-10630-PBS (D. Mass. Feb. 27, 2007).

[17] *Id.* at 14.

[18] *Id.* at 16.

6

On August 1, 2007, I conducted a status conference at which the Plaintiffs asserted that in light of the district court's ruling with respect to the Defendants' authorization defense, the case was once again ripe for summary judgment as the Defendants failed to raise any other defense or establish a trialworthy issue. I took the matter under advisement and the parties filed supplemental memoranda.

### III. POSITIONS OF THE PARTIES

A. The Plaintiffs

The Plaintiffs argue that summary judgment is warranted on several grounds. They assert that the affidavits, exhibits, and Statement of Material Facts accompanying the Motion proffer sufficient facts with respect to the Defendants' involvement in the scheme to convert funds from the Plaintiffs' margin accounts for a finding of non-dischargeability under 11 U.S.C. § 523. Moreover, the Plaintiffs contend that the Defendants failed to meet their burden under Fed. R. Bankr. P. 7056 to contest the Motion with credible evidence demonstrating the existence of a genuine issue of material fact and have failed to comply with MLBR 7056-1. The Plaintiffs' further argue that the district court finally decided the availability of the Defendants' authorization defense against them and is now law of the case.

B. The Defendants

The Defendants argue that summary judgment is inappropriate at this time. First, the Defendants assert that the district court's ruling contained a directive that the Defendants' mental state be determined prior to entering judgment and that nothing in the Plaintiffs' materials proves fraudulent intent. Second, the Defendants contend that I have previously heard and rejected the Plaintiffs' arguments regarding the sufficiency of the Objection. They argue that the Plaintiffs' argument is essentially a motion for reconsideration of my decision finding that the Objection

7

satisfied the local rules governing motions for summary judgment. Third, while the Defendants concede that the district court has finally determined that the transactions which resulted in the losses to the Plaintiffs' margin accounts could not have been authorized and is now law of the case, the Defendants argue that the adversary proceeding not about authorization and that facts may exist to allow one or more of the Defendants to prevail.

### IV. DISCUSSION

A. The Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[19] "A 'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."[20] Material facts are those having the potential to affect the outcome of the suit under the applicable law.[21]

The party seeking summary judgment bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which demonstrate the absence of a genuine issue of material fact."[22] The nonmoving party must then "produce 'specific facts, in suitable evidentiary form, to . . . establish

---

[19] Fed. R. Civ. P. 56(c) made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

[20] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (*quoting Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

the presence of a trialworthy issue.'"[23]  A trialworthy issue cannot be established by "conclusory allegations, improbable inferences, and unsupported speculation."[24]  The court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[25]  Summary judgment is inappropriate, however, where those inferences are not mandated by the record.[26]

    B.  <u>Exception to Discharge Under Section 523(a)(4) and (a)(6)</u>

In order to prevail on the Complaint, the Plaintiffs must establish that that the Award is excepted from discharge under 11 U.S.C. §§ 523(a)(4) and/or (a)(6).  Section 523(a)(4) of the Bankruptcy Code excepts from discharge debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.[27]  The United States Supreme Court has defined embezzlement as "the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come."[28]  "To establish embezzlement, the plaintiffs must prove (1) the debtor's appropriation of property was for the debtor's benefit and (2) the appropriation occurred with fraudulent intent or by deceit."[29]  Courts may infer fraudulent intent

---

[23] *Triangle Trading Co.*, 200 F.3d at 2, (*quoting Morris v. Gov't Dev't Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).

[24] *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[25] *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

[26] *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir. 1994).

[27] 11 U.S.C. § 523(a)(4).

[28] *Moore v. United States*, 160 U.S. 268, 269 (1895).

[29] *KMK Factoring, L.L.C. v. McKnew (In re McKnew)*, 270 B.R. 593, 631 (Bankr. E.D. Va. 2001).

from the debtor's actions and the surrounding circumstances.[30] The inquiry must be whether there was "intent to convert, not intent to harm."[31] Larceny, on the other hand, is distinguishable from embezzlement in that the debtor's acquisition of the property was unlawful.[32]

Judge Saris determined that the arbitration "panel necessarily found that . . . a conversion occurred," in order for Potapov to have obtained the Award.[33] As such, this determination applies to all three Defendants and is now law of the case.[34] It is also undisputed that the Defendants, as agents of the brokerage firm which held the Plaintiffs' securities margin accounts, were in lawful possession of the Plaintiffs' margin accounts. There are, however, several issues remaining issues before me, including whether the Defendants appropriated the Plaintiffs' funds for their own benefit and with the requisite fraudulent intent.

Potapov asserts that he specifically instructed the Defendants that no one was authorized to touch his margin accounts and that they could only execute a trade order on his specific

---

[30] *OSB Mfg., Inc. v. Hathaway (In re Hathaway)*, 364 B.R. 220, 239 (Bankr. E.D. Va. 2007) (*citing Hall v. Blanton (In re Blanton)*, 149 B.R. 393, 394 (Bankr. E.D. Va. 1992)).

[31] *Clark v. Taylor (In re Taylor)*, 58 B.R. 849, 855 (Bankr. E.D. Va. 1986).

[32] *Farley v. Romano (In re Romano)*, 353 B.R. 738, 765 n.10 (Bankr. D. Mass. 2006) (*citing Consumer United Ins. Co. v. Bustamante (In re Bustamante)*, 239 B.R. 770, 777 (Bankr. N.D. Ohio 1999)).

[33] *Potapov v. Dunn et al. (In re Dunn)*, 1:06-cv-10630-PBS, at 14 (D. Mass. Feb. 27, 2007) (ruling the tort of conversion simply requires the intentional exercise of dominion and control of personal property of another which deprives a person of property).

[34] The law of the case doctrine "precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided." *Cohen v. Brown Univ.*, 101 F.3d 155, 167 (1st Cir. 1996). "For a bar to exist, an issue must have been 'actually considered and decided by the appellate court' or . . . be 'necessarily inferred from the disposition on appeal.'" *Field v. Mans*, 157 F.3d 35, 40 (1st Cir. 1998) (*citing Commerical Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764 (1st Cir. 1994)). Courts "must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. Connell*, 6 F.3d 27, 30 (1st Cir. 1993).

instructions.[35] Despite this, Potapov averred that Sherman admitted transferring other customer's losses into the Plaintiffs' accounts to prevent those accounts from going negative and forcing Whitehorne out of business and that both Davidson and Dunn admitted that they agreed to the transfers.[36]

The Defendants generally dispute the Plaintiffs' factual assertions and have offered the Dunn Affidavit to support their defense that Potapov authorized the transactions in question. Additionally, Sherman and Davidson contend that the debt cannot be non-dischargeable in their bankruptcies because they did not execute the transactions.

Addressing the authorization defense first, it is apparent that the parties do not dispute that Judge Saris concluded that there was no authorization for the transfers and that conclusion is now law of the case.[37] As such, the Dunn Affidavit cannot support an authorization defense.

In light of Judge Saris' conclusion, the Dunn Affidavit lacks credibility, and therefore the Objection's factual allegations are unsupported by evidence. It is worthy of note that neither Sherman nor Davidson attached their own affidavits to the Objection, but instead chose to rely entirely on the Dunn Affidavit. Accordingly, the Defendants have failed to raise a genuine issue of material fact. I must now consider whether the record before me is sufficient to grant the Plaintiffs summary judgment under 11 U.S.C. § 523.

Accepting the statements in the Potapov's Affidavit as true, they indicate the Defendants transferred losses into the Plaintiffs' accounts to prevent the Whitehorne from sustaining losses which would have driven it out of business and potentially exposed the Defendants to outstanding

---

[35] Potapov Aff. ¶ 18.

[36] *Id.* at ¶ 36-43.

[37] *Cohen v. Brown Univ.*, 101 F.3d at 167.

11

liabilities on customer accounts. It is clear that such actions were for the benefit of the Defendants. What is not clear, however, is what role each of the Defendants played in the executing the transfer, either individually or collectively, that would be evidence for me to find fraudulent mental states sufficient to except the Award from discharge under 11 U.S.C. § 523(a)(4) in any of their bankruptcies.[38] The same would hold true for a finding of willful and malicious under 11 U.S.C. § 523(a)(6).

As such, the Plaintiffs' have not sustained their burden of proving all elements of their Complaint and therefore summary judgment is inappropriate at this time.

## V. CONCLUSION

In light of the foregoing, I will enter an order denying the Motion.

*[signature]*

_____
William Hillman
United States Bankruptcy Judge

Dated: October 30, 2007

---

[38] There is no information regarding the exact corporate structure of Whitehorne and the positions the Defendants held within the firm. Indeed, I have no information as what liabilities may have flowed between them by virtue of those positions.

12